UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS AUSTIN,

    Plaintiff,

v.                                            Case No. 8:17-cv-2363-AAS

NANCY A. BERRYHILL, Deputy
Commissioner of Operations,
Social Security Administration,

    Defendant.
_____/

## ORDER

Thomas Austin seeks judicial review of a decision by the Commissioner of Social Security (Commissioner) denying his claims for supplemental security income (SSI) and disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), administrative record, pleadings, and joint memorandum the parties submitted, the Commissioner's decision is **AFFIRMED**.

### I.     PROCEDURAL HISTORY

Mr. Austin applied for DIB for a disability he claims began on October 5, 2013. (Tr. 200–06). He also applied for SSI for a disability he claims began on July 1, 2006. (Tr. 207–12). Disability examiners denied Mr. Austin's application initially and after reconsideration. (Tr. 66–89, 92–119). Mr. Austin then requested a hearing before an ALJ, who found Mr. Austin not disabled. (Tr. 18–37, 148–50).

1

The Appeals Council denied Mr. Austin's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–3). Mr. Austin now seeks review of the Commissioner's final decision. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Background

Mr. Austin was thirty-four years old when he submitted his SSI and DIB applications, and thirty-five years old when the ALJ held the hearing. (Tr. 46, 200, 207). Mr. Austin has a twelfth-grade education. (Tr. 48). He has past relevant work as a construction laborer. (Tr. 61–62). Mr. Austin claimed disability because of "mental problems" and back pain. (Tr. 66, 92).

### B. Summary of the ALJ's Decision

The ALJ must follow five steps when evaluating a claim for disability.[1] 20 C.F.R. §§ 404.1520(a), 416.920(a). First, if a claimant is engaged in substantial gainful activity,[2] he is not disabled. §§ 404.1520(b), 416.920(b). Second, if a claimant does not have an impairment or combination of impairments that significantly limit his physical or mental ability to perform basic work activities, then he does not have a severe impairment and is not disabled. §§ 404.1520(c), 416.920(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if

---

[1] If the ALJ determines that the claimant is under a disability at any step of the sequential analysis, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[2] Substantial gainful activity is paid work that requires significant physical or mental activity. §§ 404.1572, 416.910.

a claimant's impairments fail to meet or equal an impairment included in the Listings, he is not disabled. §§ 404.1520(d), 416.920(d); 20 C.F.R. pt. 404, subpt. P, app. 1. Fourth, if a claimant's impairments do not prevent him from performing past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). At this fourth step, the ALJ determines the claimant's residual functional capacity ("RFC").[3] Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from performing other work that exists in the national economy, then he is not disabled. §§ 404.1520(g), 416.920(g).

The ALJ here determined Mr. Austin engaged in no substantial gainful activity since the alleged onset date. (Tr. 23). The ALJ found Mr. Austin has the following severe impairments: illiteracy; borderline intellectual functioning; bipolar disorder; depression disorder; and antisocial disorder. (*Id.*). Nonetheless, the ALJ found Mr. Austin's impairments or combination of impairments failed to meet or medically equal the severity of an impairment included in the Listings. (Tr. 24).

The ALJ then found Mr. Austin has the RFC to perform a full range of work. (Tr. 26). But the ALJ found Mr. Austin "is limited to simple, 1-2-3 step work, no semi-skilled or skilled work, and he should not work with the general public." (*Id.*). Based on these findings, the ALJ determined Mr. Austin could perform jobs that exist in significant numbers in the national economy, specifically as a garbage collector, coach

---

[3] A claimant's RFC is the level of physical and mental work he can consistently perform despite his limitations. §§ 404.1545, 416.945(a).

3

or bus cleaner, and laundry laborer. (Tr. 30–31). Therefore, the ALJ found Mr. Austin not disabled. (Tr. 31)

III. ANALYSIS

A. Standard of Review

Review of the ALJ's decision is limited to determining whether the ALJ applied correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Phillips*, 357 F.3d at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote,* 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

## B. Issues on Appeal

Mr. Austin argues the court should reverse the ALJ's decision for two reasons. (Doc. 21). Mr. Austin first argues the ALJ erred when he weighed medical opinions. (*Id.* at 23–31). And Mr. Austin argues the ALJ failed to consider Mr. Austin's medication treatment when the ALJ determined whether Mr. Austin's statements about the severity of his impairments were consistent with medical evidence. (*Id.* at 39–40). The court will address Mr. Austin's arguments in turn.

### 1. Whether ALJ Properly Considered Medical Opinions

Mr. Austin argues the ALJ erred when he considered medical opinions from Drs. Lawrence Pasman, Cecilia Yocum, Carol Delaney, and John Thibodeau. (*Id.* at 23–31). The undersigned will analyze each medical opinion in turn.

#### a. Dr. Pasman's Opinion

Mr. Austin argues the ALJ erred when he assigned little weight to Dr. Pasman's opinion. (*Id.* at 23–29). According to Mr. Austin, not enough evidence supports the ALJ's reasons for assigning little weight to Dr. Pasman's opinion. (*Id.* at 23). Mr. Austin argues his ability to understand complex instructions is unrelated to his ability to concentrate. (*Id.* at 23–24). He also argues the other medical evidence in the record fails to support the ALJ's decision to assign little weight to Dr. Pasman's opinion. (*Id.* at 24–31).

The Commissioner argues the ALJ properly weighed Dr. Pasman's opinion. (*Id.* at 31–35). According to the Commissioner, the ALJ correctly determined the medical evidence in the record fails to support Dr. Pasman's assessment that Mr.

Austin's impairments have marked-to-extreme effects on his ability to make judgments on simple and complex work-related decisions. (Doc. 21, pp. 33–35).

In assessing medical evidence, the ALJ must specifically state the weight he gives to different medical opinions and his reasons for doing so. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The ALJ may reject any medical opinion if evidence supports a contrary finding, but he must still articulate reasons for assigning little weight. *Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir. 1986).

The ALJ considers how consistent a medical opinion is with the record when determining how much weight to assign that opinion. 20 C.F.R. §§ 404.1527(c)(4); 416.927(c)(4). The ALJ may reject any medical opinion when evidence supports a different conclusion. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) (citations omitted).

Substantial evidence supports the ALJ's decision to assign little weight to Dr. Pasman's opinion. The ALJ determined Dr. Pasman's opinion is inconsistent with his own evaluation and other medical evidence. (Tr. 29). The ALJ specifically noted Dr. Pasman's assessment that Mr. Austin's impairments have no effect on his ability to understand, remember, and carry out simple and complex instructions is inconsistent with Dr. Pasman's evaluation. (Tr. 29).

In the section entitled "Deficits in capacity for understanding and memory" of his evaluation, Dr. Pasman noted Mr. Austin's cognitive ability "is in the extremely low range." (Tr. 466). Dr. Pasman further noted Mr. Austin's "[m]emory of recent events appears to be impaired . . . ." (*Id.*). But, in his assessment, Dr. Pasman opined

Mr. Austin's impairments have no effect on his ability to understand, remember, and carry out simple or complex instructions. (Tr. 468). Dr. Pasman's own evaluation is inconsistent with his final assessment; so, the ALJ committed no reversible error when he assigned little weight to Dr. Pasman's opinion.

     b.  *Dr. Yocum's Opinion*

Mr. Austin argues the ALJ erred when he assigned great weight to Dr. Yocum's opinion. (Doc. 21, pp. 29–30). According to Mr. Austin, by assigning great weight to Dr. Yocum's opinion, the ALJ assigned great weight to Dr. Yocum's finding that Mr. Austin was malingering. (*Id.* at 29). Mr. Austin argues assigning great weight to Dr. Yocum's finding about Mr. Austin's malingering is reversible error because not enough evidence supports a finding about malingering. (*Id.* at 29–30).

The Commissioner argues the ALJ correctly considered Dr. Yocum's opinion that Mr. Austin showed a strong possibility of malingering. (*Id.* at 37–39). According to the Commissioner, the medical evidence in the record supports Dr. Yocum's suspicion—not diagnosis—of malingering. (*Id.* at 38).

With respect to Dr. Yocum's opinion, the ALJ stated:

> Cecilia Yocum, Ph.D., a consultative examiner opined that the claimant's test scores were invalid, and the claimant likely malingered (1F, 4). Her opinion is supported by his results on the test of memory malingering, where he obtained a score of 42, 37, and 42 (1F, 4). Scores below 45 on any of the measures are considered significant for malingering (1F, 4). Thus, Dr. Yocum's opinion is given great weight.

(Tr. 29); *see also Black's Law Dictionary* 1102 (10th ed.) (defining "malinger" as "to feign illness or disability").

7

Contrary to Mr. Austin's assertion, the ALJ did not give weight to any finding by Dr. Yocum that Mr. Austin malingered. The ALJ instead assigned great weight to Dr. Yocum's opinion because medical evidence supported her finding that Mr. Austin *likely* malingered.

In her evaluation of Mr. Austin, Dr. Yocum noted the results on Mr. Austin's Wechsler Adult Intelligent Scale III showed he has a full-scale intelligence quotient (IQ) of 58, a verbal IQ of 59, and a performance IQ of 59. (Tr. 338). Dr. Yocum opined Mr. Austin's test results are probably invalid because he has no history of attending mentally-handicapped classes. (*Id.*). So, Dr. Yocum stated "there is a strong possibility [Mr. Austin] was malingering during the testing." (*Id.*).

Dr. Yocum also administered the Test of Memory Malingering on Mr. Austin. (Tr. 339). On each of the test's trials Mr. Austin scored below 45, which Dr. Yocum noted "are considered significant for malingering." (*Id.*).

Dr. Yocum's evaluations and medical notes support her finding that Mr. Austin likely malingered. The ALJ therefore committed no error when he assigned Dr. Yocum's opinion great weight.

     *c.* *Drs. Delaney's and Thibodeau's Opinions*

Mr. Austin argues the ALJ erred when he assigned great weight to Drs. Delany's and Thibodeau's opinions because the ALJ failed to "articulate substantial evidence" to support giving more weight to opinions from non-examining, state-agency physicians over Dr. Pasman's opinion. (Doc. 21, pp. 30–31). According to Mr.

8

Austin, the ALJ erred when he determined Mr. Austin's daily activities supported Drs. Delaney's and Thibodeau's opinions. (Doc. 21, pp. 30–31).

The Commissioner argues the ALJ correctly determined the medical evidence in the record supports Drs. Delaney's and Thibodeau's opinions. (*Id.* at 35–37). The Commissioner also argues the ALJ properly considered Mr. Austin's daily activities when he determined Mr. Austin's RFC. (*Id.* at 35–36).

An ALJ may credit testimony from non-examining doctors. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986); *see also* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) (rescinded Mar. 27, 2017) (stating the ALJ may give greater weight to state-agency consultants in appropriate circumstances).

Substantial evidence supports the ALJ's decision to assign great weight to Drs. Delaney's and Thibodeau's opinions. The ALJ discussed Drs. Delaney's and Thibodeau's opinions that Mr. Austin is mildly restricted in his daily activities; moderately limited in maintaining social functioning; and moderately limited in maintaining concentration, persistence, and pace. (Tr. 28, 70–71, 98–99).

The ALJ considered Mr. Austin's testimony that he performs work "under the table," including yardwork, lifting boxes, and cleaning. (Tr. 28–29, 49). The ALJ also considered Dr. Delaney's observations that Mr. Austin cleans, cooks, pays bill, fishes, and drives. (Tr. 28–29, 71, 83). An ALJ may consider daily activities at step four of the sequential analysis. *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); *see also* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (stating the ALJ must base the RFC assessment on reports of daily activities, among other things). So, the ALJ

9

committed no error when he found medical evidence supported Drs. Delaney's and Thibodeau's opinions that Mr. Austin is mildly limited in his daily activities.

The ALJ discussed how Mr. Austin lives with his girlfriend and five children and how Mr. Austin keeps in touch with his parents and oldest brother. (Tr. 29, 367). The ALJ considered Mr. Austin's statements that his girlfriend is someone "he can turn to for help and support." (Tr. 29, 426). The ALJ also considered Mr. Austin's testimony when he discussed jobs that required him to be around other people. (Tr. 29, 51). But the ALJ also considered how Mr. Austin has no friends and has trouble interacting with others at work. (Tr. 29, 50, 367). This evidence supports Drs. Delaney's and Thibodeau's opinions that Mr. Austin is moderately limited in his social functioning. The ALJ therefore committed no error when he considered Drs. Delaney's and Thibodeau's opinions about Mr. Austin's social functioning.

Last, the ALJ discussed medical evidence in which Mr. Austin displayed lack of concentration. (Tr. 29, 365, 379, 384, 463). The ALJ also considered medical evidence that determined Mr. Austin's concentration was impaired. (Tr. 29, 466). But the ALJ also considered evidence in which Mr. Austin discussed watching tv and playing videogames. (Tr. 29, 247, 263). The ALJ discussed how Mr. Austin's attention and concentration appeared appropriate and had intact memory. (Tr. 29, 387, 435, 455). The evidence the ALJ discussed supports Drs. Delaney's and Thibodeau's opinions that Mr. Austin is moderately limited in maintaining concentration, persistence, and pace. The ALJ therefore committed no error when he considered Drs. Delaney's and Thibodeau's opinions.

Mr. Austin also argues the ALJ failed to adequately discuss Mr. Austin's ability to make work-related decisions. (Doc. 21, p. 31). An ALJ need not refer to every piece of evidence so long as his decision does not broadly reject a claim for Social Security benefits. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014). The ALJ here properly considered the opinions from Drs. Delaney and Thibodeau, both of whom found Mr. Austin "not significantly limited" in his ability to make work-related decisions. (Tr. 74, 102). The ALJ's decision shows he properly and thoroughly considered Drs. Delaney's and Thibodeau's opinion; so, any failure to expressly discuss Mr. Austin's ability to make work-related decisions is not reversible error.

\* \* \*

Substantial evidence supports how the ALJ considered the medical opinions from Drs. Pasman, Yocum, Delaney, and Thibodeau. The ALJ therefore committed no reversible error when he considered those doctors' medical opinions.[4]

2. <u>Whether ALJ Considered Mr. Austin's Medication Treatment</u>

Mr. Austin argues the ALJ erred when he determined whether Mr. Austin's statements about the severity of his impairments are consistent with medical evidence because the ALJ failed to consider Mr. Austin's medication treatment. (Doc.

---

[4] Mr. Austin also argues the ALJ erred because he determined Mr. Austin had severe borderline intellectual functioning (BIP). (Doc. 21, p. 25). In other words, the ALJ found Mr. Austin too impaired. A harmless error occurs when the ALJ commits an error that has no bearing on his substantive decision. *See Ala. Hosp. Ass'n v. Beasley*, 702 F.2d 955, 958 (11th Cir. 1983) (discussing the harmless error rule as it applies to agency decisions). Even if the ALJ erred by finding Mr. Austin had severe BIP, that error is harmless because it has no bearing on the ALJ's decision, and the ALJ would still find Mr. Austin not disabled.

11

21, pp. 39–40). The Commissioner argues the ALJ did consider Mr. Austin's medication treatment. (Doc. 21, pp. 40–43).

To establish disability based on testimony about pain and other symptoms, the claimant must show the following: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted). If the ALJ discredits subjective testimony, he must provide adequate reasons for doing so. *Id.* The ALJ may reject testimony about subjective complaints, but that rejection must be based on substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). In evaluating the intensity and severity of symptoms, the ALJ considers "[t]he type, dosage, effectiveness, and side effects of any medication" the claimant takes. 20 C.F.R. §§ 404. 1529(c)(3)(iv), 416.929(c)(3)(iv).

Contrary to Mr. Austin's argument, the ALJ specifically considered Mr. Austin's medication treatment when determining whether Mr. Austin's subjective statements about his impairments were consistent with medical evidence. (Tr. 28, 367, 445, 448). Mr. Austin's argument is therefore unsuccessful.

## IV. CONCLUSION

The ALJ committed no error when he considered the medical opinions from Drs. Pasman, Yocum, Delaney, and Thibodeau. The ALJ also considered Mr. Austin's medication treatment when determining whether Mr. Austin's statements about the severity of his impairments were consistent with the medical record. The following

is therefore **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**, and the case is **DISMISSED**. Each party will bear its own costs and expenses.

2. The Clerk of Court must enter final judgment in the Commissioner's favor consistent with 42 U.S.C. Sections 405(g) and 1383(c)(3).

**ORDERED** in Tampa, Florida, on February 4, 2019.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge